UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case No. 16-cr-20626

v                                          Honorable Thomas L. Ludington

NORMAN JAOQUIN CYR,

        Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DISCOVERY, AUTHORIZING SUBPOENA FOR JUVENILE RECORDS, ORDERING PRODUCTION OF JUVENILE RECORDS FOR IN CAMERA REVIEW, DENYING MOTION TO DISMISS, AND DENYING MOTION FOR PSYCHIATRIC EXAMINATION OF WITNESS**

On September 14, 2016 an indictment was issued charging Defendant Norman Jaoquin Cyr, an Indian, with eight counts. *See* ECF No. 1. Three of the counts charge Defendant with child abuse in the second degree arising out of incidents with G.C., a minor, in violation of M.C.L. 750.136b(3) and 18 U.S.C. §§ 1151, 1153, and 13. Three additional counts charge Defendant with child abuse in the third degree arising out of incidents with G.C. in violation of M.C.L. 750.136b(5) and 18 U.S.C. §§ 1151, 1153, and 13. Defendant has also been charged with one count of domestic assault by an habitual offender in violation of 18 U.S.C. §§ 117 and 1151, and one count of assaulting an intimate or dating partner by strangulation or attempted strangulation in violation of 18 U.S.C. §§ 113(a)(8), 1151, and 1153. These latter two charges arise out of conduct with A.D., Defendant's spouse. On December 14, 2016 a superseding indictment was issued charging Defendant with three additional counts of domestic assault by an habitual offender for allegedly assaulting G.C. *See* ECF No. 15.

On January 18, 2017 Defendant filed four motions. *See* ECF Nos. 18-21. His first motion, a motion for bond, was denied by Magistrate Judge Patricia T. Morris on January 23, 2017. His remaining three motions are now ready for decision.

**I.**

Defendant Cyr first requests that "the Government obtain and disclose to Defense Counsel any and all psychological or psychiatric reports, school records, juvenile records, or any juvenile convictions or drug reports or rehab information" of G.C. *See* ECF No. 19. In support of his request, Defendant argues that G.C. has a history of suspensions, expulsions, use of marijuana, fighting, and curfew violations. He also alleges that she has been convicted of multiple juvenile offenses, including domestic violence and automobile theft, and speculates that she has a history of mental illness and drug use. He alleges that he requires the information in order to prepare for cross examination at trial. In response, the Government notes that it does not possess the records sought by Defendant, and argues that Defendant has not established a need to discover privileged and inadmissible information. Defendant did not file a reply.

In contrast to the broad scope of discovery in civil cases, the discovery available to a criminal defendant is relatively constricted, and is generally circumscribed by the following three rules: (1) Federal Rule of Criminal Procedure 16, controlling discovery of materials within the government's possession, custody, or control regarding the defendant, *see United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013); (2) The Jencks Act, 18 U.S.C. § 3500, which holds that the Government must provide statements or reports in its possession of witnesses who testify at trial; and (3) the doctrine set forth in *Brady*. *See United States v. Presser*, 844 F.2d 1275, 1285, fn. 12 (6th Cir.1988) (stating that in most criminal prosecutions, these three rules "exhaust the universe of discovery to which the defendant is entitled").

**A.**

Defendant claims that the information he seeks falls within the meaning of *Brady*, and is necessary to preserve his rights to cross-examine G.C. under the Confrontation Clause. Under *Brady,* the government violates due process when it fails to disclose evidence related to guilt or sentencing in a criminal case that is favorable to the defendant. *Brady*, 373 U.S. at 87.[1] The *Brady* rule extends to material that could be used to impeach the credibility of a government witness. *Giglio v. United States*, 405 U.S. 150, 154–55, (1972) (impeachment evidence falls within *Brady* "[w]hen the reliability of a given witness may well be determinative of guilt or innocence"). However, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Instead, *Brady* only applies to "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs,* 427 U.S. 97, 103 (1976). The purpose of *Brady* is not "to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *United States v. Bagley*, 473 U.S. 667, 675 (1985).

A primary interest secured by the Sixth Amendment's Confrontation Clause is a defendant's right of cross-examination. *See Douglas v. Alabama*, 380 U.S. 415, 418 (1965). However, "the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish." *United States v. Owens*, 484 U.S. 554, 559 (1988) (internal quotations omitted). This is because the Confrontation Clause is not a constitutionally compelled

---

[1] The Government's *Brady* obligations are continuing. If the Government obtains any potentially exculpatory or impeachment evidence within the scope of *Brady*, the Government is required to "[p]ermit defense counsel to inspect, copy or photograph any exculpatory/impeachment evidence within the meaning of *Brady v. Maryland*, 373 U.S. 83 (l963), *United States v. Agurs*, 427 U.S. 97 (l976), and *Giglio v. United States*, 405 U.S. 105 (l972). ECF No. 11 at (2)(B)." See ECF No. 11.

rule of pretrial discovery but a "*trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (holding that the confrontation clause was not violated by preventing the defendant from discovering the victim's State of Pennsylvania Children and Youth Services file, where the judge allowed defense counsel to fully cross-examine trial witnesses on the subject). "The ability to question adverse witnesses ... does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony" and "[n]ormally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." *Id*. at 53-54.

In the present case, Defendant seeks to invoke *Brady* and the Confrontation Clause in order to obtain privileged psychological records and records that may pertain to substance abuse. He also seeks G.C.'s juvenile records. Each of these categories of evidence will be addressed in turn.

**i.**

With regard to G.C.'s psychological and medical records, courts must consider the privacy interest of a patient in the confidentiality of her medical records and the societal interest in encouraging the free flow of information between patient and psychotherapist. However, those interests are not absolute and, in the context of criminal matters, must "yield to the paramount right of the defense to cross-examine effectively the witness in a criminal case." *United States v. Society of Independent Gasoline Marketers of America*, 624 F.2d 461, 469 (4th Cir. 1979) (holding that the district court committed reversible error in denying the defendant access to a witness's hospital records for use in cross examination). A desire to spare a witness embarrassment which disclosure of medical records might entail is insufficient justification for

withholding such records from criminal defendants on trial for their liberty. *See Society of Independent Gasoline Marketers,* 624 F.2d at 469, *Batey v. Haas*, No. 2013 WL 1810762, at *10 (E.D. Mich. Apr. 30, 2013).

Courts have routinely found that certain forms of mental disorder have high probative value on the issue of credibility. *United States v. Lindstrom*, 698 F.2d 1154, 1160 (11th Cir. 1983) (finding reversible error where the district court denied defendant access to a witness's psychiatric materials where the witness was suffering from ongoing mental illness for which she had been confined, and which could seriously affect her ability to know, comprehend, and relate to the truth). "While mental illness can indeed be relevant to a witness's credibility, courts hold that the decision of whether or not to allow in evidence of a witness's mental illness falls within the broad discretion of trial courts as they balance possible prejudice versus probative value." *Boggs v. Collins*, 226 F.3d 728, 742 (6th Cir. 2000) (quotations and citations omitted). Factors a court should consider in allowing evidence of witness's mental illness are the nature of the psychological problem, the temporal recency or remoteness of the condition, and whether the witness suffered from the condition at the time of the events to which she is to testify. *Id*.

Here, Defendant broadly requests G.C.'s psychological, medical, hypothetical drug reports and rehab records. In support of this request Defendant speculates that the witness struggles with mental health and substance abuse. However, Defendant has not demonstrated that G.C. has any condition that would affect her ability to know, comprehend, or relate to the truth. Defendant also has not established that G.C.'s purported mental health issues are relevant to the question of whether she can testify truthfully as to whether Defendant assaulted her as charged. Instead, Defendant's request appears to be an impermissible "fishing expedition." Importantly, Defendant has the ability at trial to cross-examine G.C. and to call witnesses to provide opinion

testimony regarding G.C.'s character for truthfulness or untruthfulness. *See* Fed. R. Evid. 608(a); *Ritchie*, 480 U.S. at 54. Defendant's request in this regard will therefore be denied. However, the issue may be revisited at trial if Defendant establishes a specific necessity.

**ii.**

The next question is whether G.C.'s school disciplinary reports and juvenile records are discoverable. While historically courts have found juvenile adjudications to be inappropriate for impeachment, Federal Rule of Evidence 609(d) now allows for the admission of a juvenile adjudication if: "(1) it is offered in a criminal case; (2) the adjudication was of a witness other than the defendant; (3) an adult's conviction for that offense would be admissible to attack the adult's credibility; and (4) admitting the evidence is necessary to fairly determine guilt or innocence." *Id*. Impeachment using juvenile records has been allowed where a defendant demonstrates that the records contain material evidence that would undermine confidence in the outcome of the trial. *See Davis v. Alaska*, 415 U.S. 308, 319 (1974) ("[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness.").

In *Davis* the petitioner was on trial for burglary. 415 U.S. at 319. The identifying witness's juvenile records established that the witness was on probation for similar burglaries. The Supreme Court concluded that by preventing the defendant from cross-examining the witness about his juvenile records the trial court committed reversible error. The Court reasoned that the witness's records showed the existence of possible bias and prejudice, which could have led the witness to make a faulty identification of the petitioner. *Id*. at 317-18.

In support of his request for G.C.'s disciplinary reports and juvenile records, Defendant suggests that G.C. has a history of committing bad acts, and speculates that she has struggles

with substance abuse. At this stage, Defendant has not established that anything in G.C.'s juvenile record is necessary to determine Defendant's guilt or innocence, or that any of her prior bad acts are relevant to the question of whether she can testify truthfully as to whether Defendant assaulted her as charged. Defendant therefore has not established that broad discovery into G.C.'s juvenile records is appropriate.

**B.**

In the alternative, Defendant requests that the Court review G.C.'s records in camera. The Government concedes that in camera review may be appropriate where a defendant identifies privileged information that may be exculpatory. Citing *Ritchie,* the Government asserts that a defendant must establish a basis for his claim that the record contains material evidence, and argues that Defendant has not done so in this case.

As noted above, the purpose of *Brady* is not "to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *Bagley*, 473 U.S. 667, 675 (1985). For the reasons set forth above, Defendant hasn't established in camera review is necessary for medical or psychological records. Again, however, the issue may be revisited at trial if Defendant establishes a specific necessity.

On the other hand, Federal Rule of Evidence 609(d) specifically contemplates the use of juvenile adjudications for impeaching a witness in certain circumstances. In camera review of the witness's juvenile records is therefore appropriate.

**C.**

The Government argues that Defendant's request must be denied because it does not possess any of the information Defendant seeks, and thus Defendant's request is essentially one for a subpoena pursuant to Federal Rule of Criminal Procedure 17(c). While Rule 16 only

imposes an obligation on the government to turn over documents and objects, Rule 17(c) sweeps more broadly by allowing a defendant to request them from the government or third parties. *Bowman Dairy v. United States*, 341 U.S. 214, 219 (1951). Under that rule, "a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order." Fed. R. Crim. P. 17(c)(3). The defendant need not seek discovery materials from the government prior to requesting a subpoena under Rule 17 "[b]ecause the government does not possess or control all of the materials potentially relevant to a defendant's case, [] is not obligated to acquire materials possessed or controlled by others, [and] the criminal-procedure rules do not make the government the gatekeeper to evidence it may not have." *Llanez-Garcia*, 735 F.3d at 494.

On the one hand, it is not the duty of the Government to go out looking for potentially exculpatory materials under *Brady*. As explained by the Supreme Court, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one…." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). On the other hand, the Government may not "obstruct a criminal defendant's access to material needed for his defense by strategically opting not to obtain them itself." *Llanez-Garcia*, 735 F.3d at 494 (citing *Nixon*, 418 U.S. at 699).

To contain the danger that criminal defendants might misuse Rule 17(c) to expand the scope of discovery, the Court in *United States v. Nixon* held that a defendant could subpoena materials using a Rule 17(c) subpoena only if four conditions are met. 418 U.S. 683, 699 (1974). "First, the items must be evidentiary and relevant. Second, the items may not be otherwise procurable through due diligence prior to trial. Third, the requesting party must be unable to properly prepare for trial without such pre-trial production and inspection. And, finally, the

application must be made in good faith and not amount to a 'fishing expedition.'" *Llanez-Garcia*, 735 F.3d at 494 (citing *Nixon*, 418 U.S. at 699).

Defendant has met these requirements with regard to G.C.'s juvenile records. While it is currently unclear whether G.C.'s juvenile records would be admissible or relevant to her character for truthfulness or untruthfulness under Rule 608(b) or necessary to fairly determine guilt or innocence under Rule 609(d), the records are not otherwise available to Defendant. Depending upon the content of the records, they may be necessary for Defendant to properly prepare for trial. For these reasons, a subpoena will be issued for G.C.'s juvenile records, and the records will be reviewed by the Court in camera. Only that evidence which is potentially exculpatory under *Brady* will be produced to Defendant. If no such evidence exists, then Defendant will not be allowed to discover G.C.'s juvenile records, and his rights under the Confrontation Clause will be satisfied by allowing him broad latitude to cross-examine the witness at trial. *See Ritchie*, 480 U.S. 39, at 53.

**II.**

In his next pending motion, Defendant seeks to compel a psychiatric evaluation of G.C. *See* ECF No. 21. Defendant has cited no specific authority for this request, other than his broad rights under the Confrontation Clause. In response, the Government alleges that such a psychological evaluation would violate the Crime Victims' Rights Act, 18 U.S.C. § 13771(a)(8), which establishes a victim's right "to be treated with fairness and with respect for the victim's dignity and privacy." *Id*.

Defendant Cyr is on trial; the alleged victim is not. Defendant has presented neither a rule of law nor specific facts warranting an invasive psychological examination of a complaining witness in this case. At this stage, Defendant has not established that the crucible of cross-

examination at trial will be insufficient to protect his rights under the Confrontation Clause. His motion will therefore be denied.

### III.

In his final motion, Defendant moves to dismiss the indictment. *See* ECF No. 20. Defendant argues that the Government impermissibly allowed witnesses to testify about an incident that did not occur on Indian property. Specifically, Defendant alleges that an incident in which he allegedly slapped G.C. and pulled her hair after she stole a vehicle did not occur on Indian property. Defendant argues that evidence regarding that incident was both unfairly prejudicial and inadmissible. He further argues that such testimony compromised the structure of the Grand Jury proceeding, rendering it fundamentally unfair. *See Bank of Nova Scotia v. United State*, 487 U.S. 250 (1988).

In response, the Government argues that the incident in question did take place on the Isabella reservation. The victim testified to the Grand Jury that the incident occurred near the Art Van store on Pickard Road, in Mt. Pleasant, Michigan. The Government points out that the Art Van store is one mile north of the southern border of the Isabella Reservation. Defendant has not filed a reply, and has not explained why he believes that the incident did not occur on Indian property. Defendant's motion to dismiss will therefore be denied.

### IV.

Accordingly, it is **ORDERED** that Defendant's motion for discovery, ECF No. 19, is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that a subpoena requiring the production of G.C.'s juvenile records is **AUTHORIZED.** The documents will be produced to the Court for **IN CAMERA REVIEW.**

It is further **ORDERED** that Defendant Cyr is directed to **PREPARE AND SUBMIT** a proposed subpoena through the **CM/ECF Proposed Order Function,** under the Utilities menu. The subpoena should explain where and how the recipient should submit the relevant records, i.e. inform the recipient that the records should be furnished in person or through certified mail, in a package marked **confidential**, to the United States Federal Court located at **1000 Washington Avenue, Room 214; Bay City, MI 48708.**

It is further **ORDERED** that Defendant's motion for a psychiatric examination of the complaining witness, ECF No. 21, is **DENIED**.

It is further **ORDERED** that Defendant's motion to dismiss the indictment, ECF No. 20, is **DENIED.**

        s/Thomas L. Ludington  
        THOMAS L. LUDINGTON  
        United States District Judge

Dated: March 1, 2017

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 1, 2017.

        s/Michael A. Sian  
        MICHAEL A. SIAN, Case Manager